CITIZENS NATIONAL BANK OF ORANGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76993.    Promulgated December 20, 1935.

*Theodore B. Benson, Esq.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $1,521.86 in the petitioner's income tax for 1931, arising from several adjustments. The only one which the petitioner assails is the disallowance of a deduction of $11,567.13 which, as shown by the deficiency notice, is described on the petitioner's return as follows:

| | | |
|---|---|---|
| Mortgage Bank of Chile 5 m | $4,500.00 | |
| Present market price | 700.00 | |
| | | $3,800.00 |
| Appalachian Gas Co. B'45—10 m | $8,800.00 | |
| Present market value | 1,032.87 | |
| | | 7,767.13 |

The above issues are defaulted in interest (principal not yet due) and the charge-off represents the difference between market value and the amount carried on books as, which amount was charged to Surplus during 1931.

The Commissioner, in the notice of deficiency, made a full explanation of his disallowance, dealing with both the facts and the law, and concluded that the write-offs must be disallowed because there was nothing to show that the bonds were unlikely to be recovered at maturity, and because the instruction of a national bank examiner to charge off the amount was merely predicated upon an adjustment of bond values to quoted market figures rather than with regard to a determination of the amount ultimately recoverable.

The proceeding was submitted upon an "Agreed Stipulation of Facts", which is as follows:

1. The petitioner is a national bank organized under the laws of the United States and engaged in business at Orange, Virginia.

2. The tax in controversy is the corporation income tax for the calendar year 1931 in the amount of $1,521.86.

3. Throughout the calendar year 1931 the petitioner carried in an account entitled "Bonds to Secure Trust Deposits" bonds in the following names and at the following costs:

Appalachian Gas Corp. "B" _____ $9,500 *
Mortgage Bank of Chile_____ 4,750
* This amount is $10,000 cost less $500 written off in 1930 by a national bank examiner.

4. At the close of the calendar year 1931 the petitioner charged off on its books as a bad debt determined to be worthless in part $1,360 of the bonds of the Mortgage Bank of Chile and of the bonds of the Appalachian Gas Corporation the petitioner likewise charged off $4,984.26.

After the end of the calendar year 1931 and during the month of February 1932 the records of the petitioner were examined by a national bank examiner and the said examiner instructed the petitioner to make further write-offs as of December 31, 1931, of the said bonds of the Mortgage Bank of Chile in the amount of $2,150 and of the said bonds of Appalachian Gas Corporation in the amount of $2,782.89.

The following is an itemized statement of the remaining cost of the bonds on the books at January 1, 1931, the charge-off on the books, the charge-off ordered by the bank examiner and the total charge-off.

| | Cost | Charge-off on Books | Charge-off of Examiner | Total Charge-off |
|---|---|---|---|---|
| Appalachian Gas Corp_____ | $9,500 | 4,984.26 | 2,782.87 | 7,767.13 |
| Mortgage Bank of Chile_____ | 4,750 | 1,650.00 | 2,150.00 | 3,800.00 |

5. There were no actual sales of the Appalachian Gas Corporation bonds on December 31, 1931, but the bid price was 6½ and the asked price was 8. The sales price of the Mortgage Bank of Chile bonds was 11.

6. In 1931 the Appalachian Gas Corporation and the Mortgage Bank of Chile defaulted in payments of interest on their bonds.

It will be noted from this stipulation that the bank made two charge-offs against each of the items in question, one voluntarily at the end of 1931, and the other during February 1932, at the direction of a bank examiner. Nothing is stipulated from which it could be determined whether either of the bonds was in 1931 worthless or recoverable only in part, and unless the Board is required as a matter of law to regard the direction of a national bank examiner as a conclusive equivalent of the statutory condition of section 23 (j), Revenue Act of 1928,[1] no finding of fact can be made to support the deduction claimed.

The taxpayer's own voluntary charge-off at the end of 1931 proves, against the Commissioner's determination, nothing as to worthlessness or nonrecoverability; and the default in interest adds but little. As to the Mortgage Bank of Chile bonds, the Commissioner in his notice of deficiency said that "The Chile bonds mature in 1961 and the Chilean Government is guarantor of the bonds. A moratorium as to interest is now in effect but the Chilean Government declares that the moratorium is temporary." From the stipulation it may be inferred that there were actual sales of these bonds at 11. As to the Gas Corporation bonds, the Commissioner said: "The Gas Corporation bonds mature in 1945 and no evidence is before the Bureau tending to show that the bonds will not be paid in full at maturity." The only additional evidence is that there were no actual sales of the bonds on December 31, 1931, and that the bid and asked quotations were 6½ and 8.

It is stipulated that the write-off made during February 1932 was made "as of December 31, 1931" by direction of a national bank examiner. So far as appears, no one made an effort in 1931 to ascertain worthlessness or the extent of recoverability; and the amounts were not charged off in 1931. Nor is it shown, as it has been in some prior cases, when the books were closed, so that the write-off of February 1932 could be regarded as a delayed incident of the annual closing of the books as of the end of 1931. Thus, as to the second write-off, the Board could not find as a fact that the amounts were in the taxable year ascertained to be worthless or partially nonrecoverable, and could not find as a fact that they were charged off in the taxable year. In the absence of such findings properly supported by evidence, it can not be held, as the taxpayer

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

contends, that the Commissioner erred in disallowing the deduction claimed. See *Peyton Du-Pont Securities Co.* v. *Commissioner*, 66 Fed. (2d) 718 (C. C. A., 2d Cir.) ; *Fairless* v. *Commissioner*, 67 Fed. (2d) 475 (C. C. A., 6th Cir.).

The petitioner relies without argument upon the proposition that the write-down made by the bank under the compulsion of a direction by a national bank examiner is *per se* deductible, citing *Citizens National Bank of Orange* v. *Commissioner*, 74 Fed. (2d) 604. We have, with all due respect for that decision, recently discussed this proposition in *Second National Bank of Philadelphia*, 33 B. T. A. 750, and were compelled to reach the conclusion that the bank examiner's mere categorical direction that book value of bonds be written down to market value does not fulfill the express condition of the revenue act. The nature and theory of the bank examiner's direction were described in the evidence in that proceeding and preclude the assumption, as a matter of law, that the Commissioner's determination and the bank examiner's direction are at cross purposes, and that one or the other must give away.

But there is no need in the present proceeding to be concerned with a situation where the bank examiner's direction and the Commissioner's determination are in conflict in the same year. The evidence in this proceeding shows that the write-off which was made in 1931 was voluntary and not directed by the bank examiner, and that the second write-off, although made at the direction of a bank examiner, was not a " charge-off within the taxable year " as the revenue act requires.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRAMMELL dissents.